# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
MAY 30 2018

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>AN ALCATEL, MODEL: 5049Z, FCC ID:<br>2ACCJB089, in the custody of the Albuquerque<br>Police Department | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.<br><br>18mr 463 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of ___New Mexico___ *(identify the person or describe property to be searched and give its location):* The property to be searched is an ALCATEL, MODEL: 5049Z, FCC ID: 2ACCJB089, LOCATED AT THE OFFICE OF THE ALBUQUERQUE POLICE DEPARTMENT ARMED ROBBERY UNIT.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* ALCATEL, MODEL: 5049Z, FCC ID: 2ACCJB089 is believe to conceal evidence of violations of Title 18 U.S.C. 1951 (Hobbs Act Robbery), Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm), Title 18 U.S.C. 924(c) (Use of a Firearm in Relation to a Crime of Violence), Title 18 U.S.C. 2119 (Carjacking)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- [x] evidence of a crime;
- [x] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1951___, and the application is based on these facts:  See Attached Affidavit

- [x] Continued on the attached sheet.
- [ ] Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Samuel Supnick, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 30, 2018 at 1:43pm

*Judge's signature*
KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

City and state: Albuquerque, NM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ALCATEL, MODEL: 5049Z, FCC ID: 2ACCJB089, LOCATED AT THE OFFICE OF THE ALBUQUERQUE POLICE DEPARTMENT ARMED ROBBERY UNIT. | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Samuel Supnick, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device— which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed with ATF since January of 2017. I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18 and 26, United States Code.

3. Through the ATF, I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, as well as the Special Agent Basic Training Program at the ATF National Academy. During these programs, I received instruction in and practiced the

investigation of violations of federal firearms, explosives, and arson statutes. Prior to employment with ATF, I served for three and a half years as a local police officer. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the purchase, possession, distribution, and transportation of firearms and of the laundering and concealment of proceeds of firearms and drug trafficking; (2) surveillance; (3) analysis and processing of documentary, electronic, and physical evidence; (4) the legal and illegal purchase of firearms; (5) the execution of arrest and search warrants seeking firearms and narcotics (6) and firearms trafficking.

4. The statements contained in this affidavit are based, in part, on information provided by Special Agents and/or Task Force Officers of the ATF and other law enforcement officers, and on my background and experience as a Special Agent of the ATF.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is an ALCATEL, MODEL: 5049Z, FCC ID: 2ACCJB089, hereinafter referred to as the "DEVICE." The DEVICE is currently in the custody of the Albuquerque Police Department, Armed Robbery Unit and is stored at their office.

7. The applied-for warrant would authorize the forensic examination of the DEVICE to include the network carrier SIM card, for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

8.     On April 20, 2018, your Affiant was advised of the April 19, 2018 attempted armed robbery of a Taco Bell/Kentucky Fried Chicken (KFC) during business hours. The Taco Bell/KFC is located at 6810 Central Avenue SW, Albuquerque, New Mexico. Per the business's surveillance footage/still photographs reviewed by the Albuquerque Police Department's (APD's) Armed Robbery Unit and your Affiant, the male subject is allegedly the same male subject that committed several other successful robberies of businesses in and around Albuquerque, New Mexico, on 04/05/2018, 04/07/2018, 04/12/2018, and 04/19/2018. The same subject has also been identified as a suspect in an armed carjacking that occurred on or about 04/05/2018.

9.     On April 19, 2018, the male subject entered the aforementioned Taco Bell/KFC armed with a firearm and discharged a single round of .22 caliber ammunition inside the business. The unidentified male subject then proceeded to walk behind the employee counter and back into the kitchen area. The male subject got into an altercation with one employee before another employee intervened. During the altercation, the male subject dropped the firearm and one of the Taco Bell/KFC employees recovered it and chased the male subject out of the business. The Taco Bell/KFC employee surrendered the firearm to APD officers upon their arrival. Witnesses observed the male subject enter a silver or grey sedan driven by a female, bearing New Mexico registration ABWY19. The male subject was observed leaving the area in that vehicle. Upon APD/ATF inspection, the recovered firearm was found to be loaded with nine (9) rounds of .22 caliber ammunition. The firearm was later identified by ATF as a "Weapon Made from a Rifle".

10. After APD responded to the attempted armed robbery at the Taco Bell/KFC, APD officers were dispatched to 1720 Atrisco Road NW, Albuquerque, New Mexico, for a reported carjacking. An APD officer made contact with the caller, S.T. At or about the time of speaking to the APD officer, S.T. was in a silver Ford Focus bearing New Mexico registration ABWY19. S.T. advised the APD officer that she had been in that vehicle with her 4-month old son in the vicinity of the Taco Bell/KFC when an unknown male, possibly armed with a firearm, ran up to the vehicle. S.T. stated that the unknown male told her that she was getting carjacked. The unknown male jumped into the front passenger seat of the vehicle, and S.T. began to drive away with the unknown male in the vehicle. S.T. stated that the unknown male later had her pull over and told her to get in the back seat. S.T. stated that the unknown male drove to a Chevron at Second and Candelaria before exiting the vehicle and running away.

11. An APD officer on scene observed a broken tip of a glass pipe on the passenger's side of the vehicle. The officer also observed a cell phone on the side of the seat on the driver's side of the vehicle. S.T. stated that both of those items were not hers.

12. Per the incident report, R.T., the owner of the vehicle and S.T.'s father, arrived at 1720 Atrisco Road NW. An APD officer told R.T. the nature of APD's contact with S.T. R.T. stated that S.T. had left his residence at approximately 4:30 PM with his vehicle. R.T. stated that he had recently cleaned the vehicle. R.T. observed the piece of the glass pipe and cellphone and stated that both items were not his. An APD officer advised S.T. that APD would probably need to collect these items as evidence. Upon hearing this, S.T. stated that she had been with Lorenzo DESANTIAGO, her ex-boyfriend and the father of her children, earlier in the day at a duck pond. R.T. questioned S.T. as to why she had allowed DESANTIAGO in the vehicle. The APD

4

officer asked S.T. if she had more information about the prior Taco Bell/KFC robbery that she had not previously disclosed. S.T. admitted she did. The APD officer then advised her of her rights per Miranda. S.T. told an APD Detective that DESANTIAGO had been with her at the Taco Bell/KFC; however, S.T. maintained that she did not have knowledge of DESANTIAGO's intent to commit the armed robbery when he entered the Taco Bell/KFC. S.T. stated that she drove DESANTIAGO away from the Taco Bell/KFC. S.T. reiterated this same information in a later interview with APD and ATF. Based on information provided by S.T. and Taco Bell/KFC employees, DESANTIAGO entered and exited the Taco Bell/KFC prior to the robbery. In footage from the business's surveillance system, a male consistent in appearance with DESANTIAGO appeared to be using a cell phone-type device while inside of the business.

13. The silver Ford Focus, bearing New Mexico registration ABWY19, was sealed by APD and towed to the APD Crime Lab. On April 20, 2018, R.T., the registered owner of the vehicle, provided written consent for the search of his vehicle. When he arrived at the APD Crime Lab, R.T. provided APD with a note addressed to S.T. R.T. stated that the note was found at the door to his residence. The note, which R.T. believed was written by DESANTIAGO, stated that the writer believed that he had left his phone in S.T.'s car. A subsequent search of the vehicle yielded, among other items, several smart phone-type devices, to include the DEVICE. The DEVICE was located on or around the side of the driver's seat. Per the incident report, an APD officer observed a cellphone on the side of the seat on the driver's side of the vehicle. S.T. and R.T. stated that the phone did not belong to them. When powered on, the DEVICE displays a blue welcome screen.

14. Subsequent investigation by ATF and APD revealed that the Taco Bell/KFC restaurant located at 6810 Central Avenue SW, Albuquerque, New Mexico is engaged in interstate commerce. APD recovered a latent fingerprint lifted from the sticky portion of blue tape that was wrapped around a portion of the firearm from the Taco Bell/KFC. This fingerprint was identified as DESANTIAGO's. A review of DESANTIAGO's criminal history revealed that DESANTIAGO has two (2) previous felony convictions in cause numbers D-202-CR-201204348 for Aggravated Battery upon a Peace Officer (No Great Bodily Harm) and D-202-CR-2012-05333 for Battery Upon a Police Officer both filed out of the 2nd Judicial District Court, County of Bernalillo, State of New Mexico.

## **TECHNICAL TERMS**

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media includes SIM cards, flash memory cards, or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store

very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This

removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my training and experience, I know that the DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device along with evidence of criminal activities.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Samuel Supnick
Special Agent
ATF

Subscribed and sworn to before me
on May 30, 2018:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is an ALCATEL, MODEL: 5049Z, FCC ID: 2ACCJB089, to include the network carrier SIM card, hereinafter referred to as the "DEVICE." The DEVICE is currently located at the office of the Albuquerque Police Department, Armed Robbery Unit.

This warrant authorizes the forensic examination of the DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the DEVICE described in Attachment A that relate to violations of Title 18 U.S.C. 1951 (Hobbs Act Robbery), Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm), Title 18 U.S.C. 924(c) (Use of a Firearm in Relation to a Crime of Violence), Title 18 U.S.C. 2119 (Carjacking) including:

   a. Information related to any firearm used during the course of the crimes listed above, including the identifies who owned, possessed, and used the firearms during the course of the crimes;

   b. Any communication with and among co-conspirators related to the crimes listed above;

   c. Any information relating to distribution or use of the proceeds of the crimes listed above;

   d. Any subscriber information, contact information to include, names, addresses, telephone numbers, email addresses or other identifiers;

   e. Any call log information, including missed, incoming and outgoing calls and any information associated with those numbers;

   f. Any photographs, video and audio files related to the crimes listed above;

   g. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;

    h.  Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;

    i.  Any Global Positioning Satellite (GPS) entries, Internet Protocol Connections, Location entries to include Cell Tower and WiFi entires depicting where the phone was located between April 1, 2018, and April 27, 2018;

    j.  Any internet or browser entries or history;

    k.  Any system data or configuration information contained within the device

2. Any other user or system files and data, contained on the cellular device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of violations of law.

3. Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

